UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DIANE SHANAHAN, RAYMOND GREEN, and
LESTER PEARSALL,

                      Plaintiffs,              **MEMORANDUM AND ORDER**

      v.                                        2:21-cv-7106 (RPK) (SIL)

TOWN OF HUNTINGTON, HUNTINGTON
TOWN SUPERVISOR EDMUND J. SMYTH,
KEVIN S. ORELLI, SEAN CAVANAGH, and
LISA BAISLEY,

                      Defendants.
-------------------------------------------------------------x

RACHEL P. KOVNER, United States District Judge:

       Plaintiffs Diane Shanahan, Raymond Green, and Lester Pearsall bring this action alleging employment discrimination and retaliation by defendants Kevin S. Orelli; Sean Cavanagh, both personally and as the executor of the estate of Thomas R. Cavanagh; Lisa Baisley; Huntington Town Supervisor Edmund J. Smyth (collectively, the "individual defendants"); and the Town of Huntington. Defendants have moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss three of plaintiffs' five claims: a claim for assertedly unconstitutional disclosure of medical information; a claim for defamation; and a claim for unlawful discrimination by an entity receiving federal financial assistance, in violation of Title VI of the Civil Rights Act of 1964. For the reasons explained below, the partial motion to dismiss is granted.

## BACKGROUND

       The following facts are taken from plaintiffs' Second Amended Complaint ("SAC") (Dkt. #22) and are assumed true for the purposes of this motion.

1

Plaintiff Shanahan is a Native American and African American woman who worked for the Town for over thirty years and is now retired. SAC ¶¶ 10, 29–30; Opp'n 1 (Dkt. #41-3). Plaintiffs Green and Pearsall are both African American men who have each worked for the Town for over thirty years. SAC ¶¶ 11–12, 64–65, 121, 133–34. Each individual defendant was a "high-ranking official and policymaker" for the Town at relevant times during plaintiffs' employment. *Id.* ¶¶ 14–18.

Plaintiffs filed this action in December 2021, Compl. (Dkt. #1), and were twice granted leave to amend their complaint, *see* Apr. 5, 2022 Min. Entry and Order; Am. Compl. (Dkt. #13); Oct. 12, 2022 Order; SAC. The operative complaint contains five counts. The first three allege unlawful discrimination. Specifically, Count One alleges that all defendants committed unlawful discrimination on the part of an entity receiving federal assistance, in violation of Title VI of the Civil Rights Act of 1964, by discriminating based on race and color and by retaliating against individuals who opposed unlawful discrimination. SAC ¶¶ 210–16. Count Two alleges that the individual defendants engaged in unlawful discrimination in violation of the Fourteenth Amendment under 42 U.S.C. § 1983, through discrimination based on race, color, age, and gender, as well as retaliation. SAC ¶¶ 217–29. And Count Three alleges that the Town is liable under Section 1983 for unlawful discrimination based on race, color, age, and gender, pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978). SAC ¶¶ 230–39.

Count Four alleges that defendant Sean Cavanagh ("Cavanagh") and the Town violated plaintiff Shanahan's rights under the Fourteenth Amendment, in violation of Section 1983, because defendant Cavanagh disclosed Shanahan's medical information. *Id.* ¶¶ 240–45. In support of that claim, the SAC states that in August 2021, plaintiff Shanahan "became ill with COVID-19" while she was employed by the Town. *Id.* ¶ 58. After plaintiff notified the Town of her infection,

defendant Cavanagh "sent a Department-wide email notifying everyone of [Shanahan's] positive COVID-19 status," stating that she "is out with COVID" and directing the email recipients, in Shanahan's absence, to "send all her q-alerts to Danny Vaughn." *Ibid.*

Finally, Count Five alleges that defendant Orelli defamed plaintiff Green. SAC ¶¶ 246–56. In support, the operative complaint alleges that in October 2021, at "a publicly streamed via Facebook campaign event," defendant Orelli discussed a job position for which plaintiff Green had applied in 2019. *Id.* ¶¶ 114–15, 248–49. Orelli stated that to "say that [Green] should have gotten that job is just ridiculous" and that Green did "one of the worst interviews." *Ibid.*

Defendants timely moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss Count One, the claim for discrimination in violation of Title VI; Count Four, the claim against Cavanagh related to COVID-19 disclosure; and Count Five, the defamation claim against Orelli. *See* Mot. to Dismiss (Dkt. #41); Mem. in Supp. (Dkt. #41-1). In response, plaintiffs opposed the dismissal of Counts Four and Five, but they withdrew Count One, their Title VI claim, against all defendants. *See* Opp'n 9–15.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." To avoid dismissal on that basis, a complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ibid.* (discussing Fed. R. Civ. P. 8). The facial "plausibility standard is not akin to a 'probability requirement,'" but it requires a plaintiff to allege sufficient facts to allow "the court to draw the reasonable inference that the defendant is liable for the

3

misconduct alleged." *Ibid.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof [of the facts alleged] is improbable, and that a recovery is very remote and unlikely." *Twombly*, 550 U.S. at 556 (quotation marks and citation omitted).

At the motion-to-dismiss stage, a court may consider only (i) the complaint itself, (ii) documents either attached to the complaint or incorporated in it by reference, (iii) documents the plaintiff relied on and knew of when bringing suit, and (iv) matters in the public record that are subject to judicial notice. *See, e.g.*, *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004); *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir. 1999). When reviewing the complaint on a motion to dismiss, the court must accept all facts alleged in a complaint as true, *Iqbal*, 556 U.S. at 678, and "draw[s] all reasonable inferences in favor of the plaintiff," *Buon v. Spindler*, 65 F.4th 64, 76 (2d Cir. 2023). The court, however, is not obligated to adopt "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action" that are not "supported by factual allegations." *Iqbal*, 556 U.S. at 678.

## DISCUSSION

Defendants' partial motion to dismiss to dismiss is granted. Plaintiffs' withdrawn Title VI claim is dismissed without prejudice, *see Smith v. Artus*, 522 F. App'x 82, 84–85 (2d Cir. 2013), and their claims of unconstitutional disclosure of medical information and defamation are dismissed with prejudice.

### I. The SAC Fails to State a Claim for Unconstitutional Disclosure of Medical Information.

Defendant Cavanagh's alleged disclosure of plaintiff Shanahan's COVID-19 status does not constitute an unconstitutional disclosure of medical information.

4

The Second Circuit has "recognized the right to privacy in one's personal information," including "[m]edical records." *Hancock v. County of Rensselaer*, 882 F.3d 58, 65 (2d Cir. 2018) (collecting cases). A "constitutional violation only occurs when the individual's interest in privacy outweighs the government's interest in breaching it." *Ibid.* "When evaluating executive action that does not involve penological interests, the test is . . . whether the action was so 'arbitrary' as to 'shock the conscience.'" *Id.* at 65–66 (footnote omitted) (quoting *O'Connor v. Pierson*, 426 F.3d 187, 203 (2d Cir. 2005)). "[W]hether executive action shocks the conscience depends on the state of mind of the government actor and the context in which the action was taken." *O'Connor*, 426 F.3d at 203 (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 849, 854 (1998)). "[M]ere negligence will never" be sufficient to support a Fourteenth Amendment claim for violation of one's medical privacy. *Ibid.* The strength of the asserted privacy interest is relevant to "how strong the government's interest must be in order to override it," with "[s]tronger privacy interests . . . required to hold executive actors liable who acted with less culpable mental states." *Hancock*, 882 F.3d at 66–67.

The alleged disclosure of Shanahan's COVID-19 status does not support a Fourteenth Amendment claim because it does not shock the conscience in the context of the COVID-19 pandemic. Shanahan has a relatively weak privacy interest in her COVID-19 status. As an initial matter, she voluntarily disclosed her diagnosis to Cavanagh. *See* SAC ¶ 58; *Hancock*, 882 F.3d at 67 ("[T]he fact that [plaintiff] had already disclosed her medical condition to the school . . . made her privacy interest relatively weak." (citing *Matson*, 631 F.3d at 66–68)). And while COVID-19 can be a serious illness, it generally does not engender "societal discrimination and intolerance against those suffering" from it. *Matson v. Bd. of Educ. of the City Sch. Dist. of N.Y.*, 631 F.3d 57, 67 (2d Cir. 2011) (emphasizing in dismissing claim based on disclosure of fibromyalgia that the

5

condition did not carry a "a social stigma" comparable to that which "attache[s] to other medical conditions, such as AIDS" (citation omitted)).  The SAC also lacks factual allegations that plausibly suggest Shanahan "personally suffered discrimination or intolerance" due to the disclosure of her COVID-19 diagnosis.  *Id.* at 68; *see* SAC ¶ 58 (stating only that plaintiff "receiv[ed] unwanted calls from . . . co-workers inquiring about her COVID-19 status).  In sum, because Shanahan "had already disclosed" her COVID-19 diagnosis to Cavanagh and because COVID-19 "was not as serious or stigmatizing as other conditions," Shanahan's "privacy interest [is] relatively weak." *Hancock*, 882 F.3d at 67 (citing *Matson*, 631 F.3d at 66–68).

Shanahan's relatively weak privacy interest can thus "be overwhelmed by even a moderately strong government interest in disclosure." *Ibid*.  The Town's interest in preventing the spread of COVID-19 by alerting its employees to the diagnosis of their co-worker, Shanahan, qualifies as at least moderately strong.  *See* Reply 1–2 (Dkt. #41-4); *cf. Roman Cath. Diocese of Brooklyn v. Cuomo*, 592 U.S. 14, 18 (2020) (per curiam) ("Stemming the spread of COVID-19 is unquestionably a compelling interest.").  Given this interest, Shanahan's bare assertion that Cavanagh's email was an "act of retaliation," SAC ¶¶ 58, 60, is insufficient to plausibly suggest a conscience-shocking degree of culpability on the part of Cavanagh.  *See Matson*, 631 F.3d at 68 (affirming dismissal of claim based on disclosure of fibromyalgia diagnosis in a public report of investigation, notwithstanding plaintiff's claim that the disclosure was "for the purpose of 'embarrassing' and 'humiliating' her," when agency had a policy of publishing reports to inform the public of its investigations (brackets omitted)).

Defendants' motion to dismiss is therefore granted as it pertains to plaintiffs' Fourteenth Amendment claim regarding the disclosure of Shanahan's medical information.

6

II.     **Plaintiff's Defamation Claim Fails as a Matter of Law.**

Defendant Orelli's public statements regarding plaintiff Green do not constitute defamation.

To state a claim for defamation under New York law, "a complaint must allege '(1) a false statement that is (2) published to a third party (3) without privilege or authorization.'" *Elias v. Rolling Stone LLC*, 872 F.3d 97, 104 (2d Cir. 2017) (quoting *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 41–42 (App. Div. 2014)). The complaint must also allege that the statement (4) caused harm, unless the statement constitutes defamation *per se*. *See ibid.* Under New York law, "[e]xpressions of opinion, as opposed to assertions of fact, are deemed privileged and, no matter how offensive, cannot be the subject of an action for defamation." *Mann v. Abel*, 885 N.E.2d 884, 885–86 (N.Y. 2008). "Whether a particular statement constitutes an opinion or an objective fact is a question of law." *Id.* at 885. Several factors bear on whether a statement constitutes an opinion: "(1) whether the specific language in issue has a precise meaning which is readily understood; (2) whether the statements are capable of being proven true or false; and (3) whether either the full context of the communication in which the statement appears or the broader social context and surrounding circumstances are such as to signal readers or listeners that what is being read or heard is likely to be opinion, not fact." *Id.* at 886 (ellipsis and citation omitted).

Defendant Orelli's statements that it would be "ridiculous" to say that plaintiff Green "should have gotten" a certain job and that Green did "one of the worst interviews," SAC ¶¶ 114–15, 248–49, are nonactionable statements of opinion. The words "worst" and "ridiculous" are largely subjective. *See, e.g.*, *Chau v. Lewis*, 935 F. Supp. 2d 644, 661 (S.D.N.Y. 2013) (finding that "'worst of the worst' . . . is a non-actionable pure opinion"), *aff'd*, 771 F.3d 118 (2d Cir. 2014);

7

*Fleischer v. NYP Holdings, Inc.*, 961 N.Y.S.2d 393, 394–95 (App. Div. 2013) (holding statement "that plaintiff had 'ridiculous' mood swings" was "vague" and a "non-actionable expression[] of opinion"). And an employer's impressions about an applicant's performance in a job interview, like impressions about an employee's job performance, also involve subjective assessments. *See Adler v. Solar Power, Inc.*, No. 16-CV-1635 (LTS) (GWG), 2018 WL 1626162, at *10 (S.D.N.Y. Mar. 30, 2018) ("[Defendant]'s statements characterizing [employee] as incompetent and unprofessional are opinion because they implicate subjective standards of performance without precise definitions and are not readily classified as either true or false."); *Brattis v. Rainbow Advert. Holdings, L.L.C.*, No. 99-CV-10144 (NRB), 2000 WL 702921, at *4 (S.D.N.Y. May 31, 2000) ("Under New York law, the evaluation of an employee's performance, even an unsatisfactory evaluation, is a matter of opinion that cannot be objectively categorized as true or false and cannot be actionable."). Moreover, the context of Orelli's statement—as an "unprompted" remark at a campaign event—reinforces that it is properly classed as an opinion statement, because campaign events are typically forums for the expression of off-the-cuff opinions. *See 600 W. 115th St. Corp. v. Von Gutfeld*, 603 N.E.2d 930, 936 (N.Y. 1992) (context of remarks as "impromptu comments at a heated public debate" supported treatment of statements as opinion); *cf. Gross v. N.Y. Times Co.*, 623 N.E.2d 1163, 1169 (N.Y. 1993) (context of statements "made in the course of a lengthy, copiously documented newspaper series that was written only after what purported to be a thorough investigation" weighed against classification as opinion).

Green's separate argument that the alleged statements, even if opinion, constitute defamation *per se* because they "attack" Green's "trade or profession," *see* Opp'n 14 (citation omitted), is unpersuasive. Statements that constitute defamation *per se* are exempt from the requirement of showing special damages. *Allen v. CH Energy Grp., Inc.*, 872 N.Y.S.2d 237, 238

8

(App. Div. 2009). One category of such statements includes those that "impute[] incompetence, incapacity or unfitness in the performance of one's profession or trade." *Ibid.* (quotation marks and citation omitted). But statements of opinion are still not actionable, even as defamation *per se*. *See, e.g.*, *Perchuk v. Perfect Body Image, LLC*, 198 N.Y.S.3d 562, 564 (App. Div. 2023); *Bowen v. Van Bramer*, 168 N.Y.S.3d 107, 108–09 (App. Div. 2022). And regardless, statements impugning one's capacity in his or her profession or trade "must be made with reference to a matter of significance and importance for the operation of the business, rather than a more general reflection upon the plaintiff's character or qualities." *Pure Power Boot Camp, Inc. v. Warrior Fitness Boot Camp, LLC*, 813 F. Supp. 2d 489, 550 (S.D.N.Y. 2011) (brackets omitted) (quoting *Liberman v. Gelstein*, 605 N.E.2d 344, 348 (N.Y. 1992)). Orelli's statements regarding Green's job interview and whether "he should have gotten" a certain job do not so directly impugn Green's professional reputation as to rise to the level of defamation *per se*. *See Aronson v. Wiersma*, 483 N.E.2d 1138, 1139 (N.Y. 1985) ("The mere expression of unhappiness with plaintiff's fulfilling her [work] duties . . . is not libelous *per se*."); *see also Kforce, Inc. v. Alden Pers., Inc.*, 288 F. Supp. 2d 513, 517 (S.D.N.Y. 2003).

Defendants' motion to dismiss plaintiffs' defamation claim is therefore granted.

### III. Plaintiffs' Medical-Information and Defamation Claims Are Dismissed with Prejudice.

Plaintiffs' claims of unconstitutional disclosure of medical information and defamation are dismissed with prejudice. "When a plaintiff was aware 'of the deficiencies in his complaint when he first amended,' he 'clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.'" *Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257–58 (2d Cir. 2018) (brackets omitted) (quoting *Denny v. Barber*, 576 F.2d 465, 471 (2d Cir. 1978)); *see, e.g.*, *Housey v. Proctor & Gamble Co.*, No. 22-

9

888, 2022 WL 17844403, at *2 (2d Cir. Dec. 22, 2022) (affirming denial of leave to amend plaintiff's "once-amended complaint" where plaintiff failed to establish "proposed amendments [that] would be able to cure the defects identified by the district court"). Plaintiffs have already amended their complaint twice after notice of defendants' arguments for dismissal of these claims, *see* Ltr. Mot. for Pre-Mot. Conf. 3 (Dkt. #9); Ltr. Mot. for Pre-Mot. Conf. 2–3 (Dkt. #18), and even now, plaintiffs do not propose any amendments that would cure the deficiencies, *see* Opp'n 15. Accordingly, a further opportunity to amend is unwarranted, and plaintiffs' claims of unconstitutional disclosure of medical information and defamation are dismissed with prejudice.

## CONCLUSION

Defendants' partial motion to dismiss is granted. Plaintiffs' Title VI claim is dismissed without prejudice and their claims of unconstitutional disclosure of medical information and defamation are dismissed with prejudice.

SO ORDERED.

Dated: September 25, 2024  
      Brooklyn, New York

           */s/ Rachel Kovner*  
           RACHEL P. KOVNER  
           United States District Judge